Ct. 244, 246, 66 L.Ed. 458; Stafford v. Wallace, 258 U.S. 495, 519, 42 S.Ct. 397, 403, 66 L.Ed. 735, 23 A.L.R. 229; Board of Trade of Chicago v. Olsen, 262 U.S. 1, 35, 43 S.Ct. 470, 476, 67 L.Ed. 839; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 439, 50 S.Ct. 220, 224, 74 L.Ed. 524.

 Without going into further details, it must be ruled that the act challenged by the plaintiffs is constitutional, and that the plaintiffs are not entitled to any order predicated upon the invalidity of the act.

2. The only other question is whether the regulations prescribed or provided for by the Congress are so onerous as to fall under the condemnation of the due process provision of the Fifth Amendment.

Assuming, as we must, that the Congress exercised a power within its constitutional sphere, is it using such power arbitrarily?

It is the law that when the Congress properly enters the field of its authorized activity it may not only adopt means necessary, but, in like manner, means convenient to the exercise of its power. Hoke v. United States, 227 U.S. 308, loc. cit. 323, 33 S.Ct. 281, 57 L.Ed. 523, 43 L.R.A. (N.S.) 906, Ann.Cas.1913E, 905.

In Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 215, 5 S.Ct. 826, 834, 29 L.Ed. 158, the court quoted from Cooley's Constitutional Limitations as follows: "It is not doubted that congress has the power to go beyond the general regulations of commerce which it is accustomed to establish, and to descend to the most minute directions if it shall be deemed advisable, and that, to whatever extent ground shall be covered by those directions, the exercise of state power is excluded. Congress may establish police regulations as well as the states, confining their operations to the subjects over which it is given control by the constitution."

In the case of Tagg Bros. v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524, the court decided an almost identical question. In that case the court was dealing with stockyards. These constituted market agencies for livestock, just as the Board of Trade and its members maintain a place for grain transactions. In the Tagg Bros. Case the court upheld regulations promulgated by the Secretary of Agriculture. Such regulations were as burdensome as those that potentially may be imposed in the enforcement of the law now under observation. See, also, Pacific Telephone & Telegraph Company v. Seattle, 291 U.S. 300, 54 S.Ct. 383, 78 L.Ed. 810.

If, and when, regulatory measures are applied which may seem too onerous to be lawful, provision is made for the protection of the members of the Board of Trade. Moreover, it will then be time to complain, and not in advance of the promulgation of such regulation.

Many other authorities were ably discussed by counsel on both sides. A number of these referred to enactments clearly unconstitutional. Time forbids further discussion of the questions presented by the parties.

In view of the above, the application for a temporary injunction will be denied.

The defendants will prepare an appropriate decree.

**In re LEVY.**

District Court, S. D. New York.
Oct. 20, 1936.

David L. Charal, of New York City, for bankrupt.

Joseph Dannenberg, of New York City (Julius M. Arnstein, of New York City, of counsel), for trustee.

GODDARD, District Judge.

The trustee makes this motion to compel the bankrupt to submit to a physical examination by an insurance company for the purpose of obtaining a policy of insurance on the bankrupt's life.

Levy, the bankrupt, is the beneficiary during his life of the income from three trusts; two of these were created by the will of his aunt, Minnie Levy, and the other by the will of his father, Arthur Levy. This income was garnisheed by the trustee in bankruptcy and executions issued to the extent of 10 per cent. of the income accrued and to accrue until $14,738.-14, the amount due from the bankrupt with interest and expenses, is paid. The collections from this source would probably average around $500 annually, with the result that it will require some 30 years to collect the full amount if the bankrupt, now 46 years of age, lives that length of time.

The trustee believes that it would be advantageous to the estate to insure the life of the bankrupt and thus eventually secure for the estate the full amount due. The trustee asserts that he has an insurable interest in the life of the bankrupt and that the bankruptcy court has the inherent power to require the bankrupt to submit himself for a physical examination for the purpose of taking out this insurance. The bankrupt objects to submitting himself to a physical examination and denies that the court has power to compel him to; the bankrupt also denies that the trustee has an insurable interest in his life.

■ It is clear, I think, that in the present instance the trustee has an insurable interest in the life of the bankrupt as the trustee will sustain a financial loss by the happening of the event insured against. 32 C.J. § 204 and cases cited. It does not follow, as has been suggested, that if this is so then every trustee in bankruptcy has an insurable interest in the life of a bankrupt, for in the usual case the bankrupt's estate has no further pecuniary interest in the life of the bankrupt after his discharge.

■ However, to continue this estate in bankruptcy, to use or to invest its available funds in the payment of premiums through a period of some 30 years instead of liquidating the estate now and distributing the assets among creditors, is contrary to the policy of the Bankruptcy Act. The act contemplates and directs the reduction of the property of the bankrupt to cash, its early distribution among the creditors and the closing of the estate. See sections 2 (7) and 47a of the Bankruptcy Act, as amended (11 U.S.C.A. §§ 11 (7) and 75 (a).

If the creditors desire to, they themselves might purchase from the trustee this particular asset; then, as assignees of the claim, they might be in a position to seek the insurance on Levy's life as suggested by the trustee.

Report of referee confirmed as to the result.

In re KEIL.

No. 28212.

District Court, E. D. New York.

Feb. 29, 1936.

